IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOE EDWARD WEBB, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | |
| vs. ) | CASE NO. 3:12-0398 |
| ) | JUDGE TRAUGER/KNOWLES |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

In this action, which was filed pursuant to 28 U.S.C. § 2255, Judge Trauger previously entered an Order stating:

> In accordance with the Memorandum contemporaneously entered, the Court finds that this action was not filed in a timely manner. However, a factual issue remains that is germane to the question of whether the limitation period should be equitably tolled so as to allow review of the petitioner's claims.
>
> Therefore, this action is hereby REFERRED to the Magistrate Judge with instructions to conduct an evidentiary hearing to determine if the petitioner did in fact ask his attorney to file an appeal. Based upon the Magistrate Judge's finding, a recommendation shall be made as to the disposition of the government's Motion to Dismiss.

Docket No. 15.

The following background will be helpful to an understanding of the issues raised.

Petitioner, proceeding pro se, began this action with the filing of a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or to Correct Sentence by a Person in Federal Custody." Docket No. 1. The Motion was executed under penalty of perjury. Petitioner also filed a

supporting Memorandum (Docket No. 2) and an "Affidavit of Fact Under Penalty of Perjury" (Docket No. 5). The Affidavit states in relevant part as follows:

> 1) My name is JOE EDWARD WEBB, JR., and I am currently incarcerated at FCI #1 Victorville Medium in Adelanto, California.
>
> 2) Around May 2009, while I was at the Criminal Justice Center in Nashville, TN., my attorney came to visit me to discuss the use of my prior convictions as predicate offense to enhance my sentence pursuant to § 851 and § 841(a). I informed counsel that one of my prior offenses was over 15 years old and that I was under the impression that it could not be used to enhance my sentence, that another inmate had informed me of this. Counsel stated in part: That the government could use my prior no matter how long it was. Around July 15, 2009 including January of 2010, while at the U.S. district court house, counsel and I discussed the use of my prior convictions to enhance my sentence, which resulted in counsel repeating what he previously stated.
>
> 3) Around January 3, 2011, at my sentencing hearing the district court judge orally pronounced that I could appeal within 10 days although I previously waived any rights in my plea agreement. I informed counsel that I wanted to appeal and file an ineffective assistance claim and appeal my sentence. At first counsel tried to persuade me that I could'nt [sic] appeal but I told him that since the district judge said that I could I wanted counsel to do so. Counsel stated that he would and that he would contest [sic] with me later concerning appellate issues.
>
> 4) Around January 6-7, 2011, I spoke with counsel while I was at the Criminal Justice Center concerning my sentencing and he confirmed what happened at the sentencing hearing. Further, counsel stated that he was in the process of filing my notice of appeal at that time.
>
> 5) Around January 2012, I spoke to counsel about my appeal and counsel stated that I could'nt [sic] appeal my sentence or file an ineffective assistance of counsel. I became upset with counsel and informed him that I thought he had already filed my appeal as discussed previously. At that time I disconnected with counsel and immediately confided in a legal Law clerk concerning what option I had to take. As a result, I diligently pursued the grounds for my § 2255 motion with help by a Law clerk here at the institution and

2

have filed a § 2255 motion.

Docket No. 5, p. 1-2.

Petitioner also filed a supporting Memorandum of Law with his Petition. Docket No. 2. In that supporting Memorandum, Petitioner raised two issues:

> Counsel rendered ineffective assistance under the 6th Amendment during the plea negotiation process when he failed to investigate or advise petitioner of the relevant law and facts in relation to his plea and sentencing when petitioner specifically requested counsel to do so.
>
> . . .
>
> Counsel rendered ineffective assistance under the 6th Amendment when he failed to file a Notice of Appeal when movant expressly instructed that he do so: and 2) even if he did not so instruct, counsel was ineffective in failing to "consult" movant regarding the merits of an appeal.

Docket No. 2, p. 2, 6.

In support of the second ground, Petitioner stated:

> It is petitioners contention that he expressly instructed counsel to file a notice of appeal that the § 851 enhancement and career offender classification enhancement was wrong because his two state priors, one for robbery was more than 15 years old, and one for a sale of controlled substance under .5 grams of cocaine in which he was given 4 years probation. Furhter [*sic*] on or about 1/3/11 and including 1/6/11, Counsel informed petitioner while petitioner was at the criminal Justice Center in Nashville, Tennessee, and immediately after sentencing on 1/3/11 at the U.S. Courthouse that he would file a notice of appeal and would consult with movant concerning the appeal at a later date.
>
> However, in between January 2012 and February 2012, while incarcerated at FCI 1 Victorville, petitioner contacted counsel concerning his appeal of his sentence and counsel informed petitioner that he couldn't appeal about his sentence.

Docket No. 2, p. 6.

3

Petitioner further argued that, even if a client has not specifically requested that counsel perfect an appeal, *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) "holds that counsel may have a constitutional duty to consult" with the client regarding the advantages and disadvantages of appealing and making a reasonable effort to determine whether the client wishes to do so. Docket No. 2, p. 7.

Shortly after the filing of the Petition, Judge Trauger entered an Order requiring the United States Attorney for the Middle District of Tennessee to file an Answer, plead or otherwise respond to the Motion in accordance with Rule 5, Rules – Section 2255 Cases. Docket No. 6.

Thereafter, the Government filed a Motion to Dismiss the Petition, arguing that it was time-barred. Docket No. 9. The Government argued that Petitioner was sentenced on January 3, 2011. The judgment was entered on January 6, 2011. The statute of limitations on a Motion to Vacate under 28 U.S.C. § 2255 is one year from the time of "the date on which the judgment conviction becomes final." Docket No. 9, p. 2, *citing* 28 U.S.C. § 2255(f)(1). The Government argued that Petitioner's judgment became final on January 6, 2011, and that he had fourteen (14) days from that date, or until January 20, 2011, in which to appeal. He did not do so. Thus, he had one year from that date in which to file a Motion to Vacate pursuant to 28 U.S.C. § 2255. Thus, the statute of limitations ran on January 20, 2012, while Petitioner did not file the instant Motion until April 23, 2012, some three months late.

Petitioner filed an "Objection" to the Motion to Dismiss. Docket No. 13. Petitioner's main argument was that his counsel misled him by an "assurance that an appeal had been filed . . . ." Docket No. 13, p. 4. Petitioner further argued that, after the deadline to file his § 2255

4

Motion, he contacted counsel and was informed that he had been misled. *Id*. He contended that equitable tolling should apply "because he is actually innocent of the sentence imposed and counsel provided ineffective assistance." *Id.* He also argued that he was entitled to an evidentiary hearing on his claims. *Id*., p. 5.

With the Objection, Petitioner filed an "Affidavit of Fact Under Penalty of Perjury." Docket No. 13, p. 11-14. That Affidavit of Fact is almost identical to the Affidavit of Fact quoted above (Docket No. 5).

Thereafter, Judge Trauger entered a Memorandum regarding the Motion to Dismiss. Docket No. 14. In that Memorandum, Judge Trauger concluded that the limitation period for the filing of the instant action ran through January 21, 2012, but that the § 2255 Motion was not filed until April 17, 2012. Thus, Judge Trauger determined that the action is "untimely," and that Petitioner did not dispute that fact.[1]  Docket No. 14, p. 4 and n.3.

The Memorandum further discussed the fact that Petitioner had waived his right to appeal a sentence within or below the relevant guidelines range (which he received). Docket No. 14, p. 5-6. Judge Trauger also noted that Petitioner was aware that an appeal was forbidden by the plea agreement. She stated, however, that the Sixth Court had held that, "An attorney is ineffective when he fails to file a requested appeal even though, as part of a plea agreement, the petitioner had partially waived his right to appeal." *Id*., p. 6, *citing Campbell v. United States,* 686 F.3d 353 (6th Cir. 2012). She stated in part:

> An attorney is ineffective when he fails to file a requested appeal
> even though, as part of a plea agreement, the petitioner had

---

[1] While it is not germane to the issues now before the Court, Judge Trauger rejected Petitioner's "actual innocence" argument. Docket No. 14, p. 5.

5

> partially waived his right to appeal. . . . As a consequence, if the petitioner did in fact instruct his attorney to file an appeal and counsel neglected to do so, counsel's failure may have caused the limitation period to run through no fault of the petitioner.
>
> There is nothing in the record that seeks to contradict the petitioner's assertion that he expressly instructed counsel to file an appeal of his sentences, although the government has not conceded the point in its Motion to Dismiss. In such a situation, the Sixth Circuit has directed that an evidentiary hearing *must* be conducted to determine if the petitioner did in fact express a desire for an appeal as he now asserts.

Docket No. 14, p. 6-7, *citing Campbell* at p. 360 (italics in original).

Thus, Judge Trauger referred the action to the undersigned with the instructions set forth above.

The undersigned held the evidentiary hearing on October 4, 2012, and a transcript of the hearing was prepared and filed. Docket No. 27. Petitioner and his former counsel, Edward DeWerff, testified at the hearing. Based upon the proof adduced at the evidentiary hearing, the Court finds as a fact that Petitioner did not ask his attorney to file an appeal. The Court so finds for several reasons.

First, the undersigned closely observed the witnesses as they testified and the Court finds that Petitioner was not a credible witness. Petitioner also admitted that, during the course of the plea negotiations in the underlying case, he lied to prosecutors on "several occasions." Docket No. 27, p. 15-18. Moreover, there were significant inconsistencies in Petitioner's prior statements and statements he made at the hearing. Considering all the evidence in the case, Petitioner's testimony simply was not reasonable.

Second, Petitioner gave inconsistent testimony regarding when he discussed an appeal with his attorney. Petitioner stated in his Affidavit:

6

> 4) Around January 6-7, 2011, I spoke with counsel while I was at the Criminal Justice Center concerning my sentencing and he confirmed what happened at the sentencing hearing. Further, counsel stated that he was in the process of filing my Notice of Appeal at that time.

Docket No. 5, p. 2.

In his Memorandum, Petitioner stated:

> Furhter [*sic*] on or about 1/3/11 and including 1/6/11, Counsel informed Petitioner while Petitioner was at the criminal Justice Center in Nashville, Tennessee, and immediately after sentencing on 1/3/11 at the U.S. Courthouse that he would file a Notice of Appeal and consult with Petitioner concerning the appeal at a later date.

Docket No. 2, p. 6.

Petitioner testified at the hearing, however, that the only time he asked his attorney to file an appeal was at the sentencing hearing on January 3, 2011. Docket No. 27, p. 6-10. Additionally, at the hearing, Petitioner testified that he contacted Mr. DeWerff on January 6 or 7, 2011, to talk about the length of his sentence. Docket No. 27, p. 9. He testified, "And he told me that – he told me how much time I had to do and that was it. *We never spoke about nothing else.*" *Id.* (Emphasis added.)

Third, Petitioner testified that he and Mr. DeWerff did not talk about an appeal of Petitioner's sentence between the time of the sentencing hearing in January 2011and January 2012. *Id.*, p. 25, 30. The first (and only) time Petitioner talked with his attorney about his appeal after the day of sentencing was in January 2012. *Id.*, p. 30. Petitioner testified, however, that he had three earlier telephone conversations with Mr. DeWerff after the sentencing, but that

7

the subject of an appeal did not arise in any of those conversations.[2] *Id.*, p. 9-11. The Court finds this testimony to be unbelievable. It is simply inconceivable that Petitioner, who testified that he was very upset about the length of his sentence, would have had three or four conversations with Mr. DeWerff without raising a question as to the status of his appeal.

Fourth, in his Memorandum, Petitioner stated that "he expressly instructed counsel to file a Notice of Appeal that the § 851 enhancement and career offender classification enhancement was wrong," referring to the fact that one of his state priors was more than 15 years old and the other had resulted in a sentence of 4 years probation. Docket No. 2, p. 6. At the evidentiary hearing, however, Petitioner gave the following testimony:

> Q. [By Mr. McDonough] What issue was it that you wanted to appeal?
>
> A. Because she stated at my sentence – because he kept telling me that I would be sentenced under the Fair Sentencing Act. And I knew that, with her giving me 240 months, that I wasn't sentenced under the Fair Sentencing Act.
>
> Q. You are talking about the crack cocaine?
>
> A. Yes, sir.
>
> Q. Now, in your affidavit you said that were asking to appeal because they had counted an armed robbery conviction when you didn't think they should have counted it; isn't that correct?
>
> A. In my affidavit?
>
> Q. Yes, sir.

---

[2] Petitioner testified that he spoke with Mr. DeWerff by telephone around January 6 or 7, 2011, in May or June 2011, when Petitioner called to let him know that he was in custody in Victorville, California, and "around about August" 2011. Docket No. 27, p. 6-10.

8

A. Armed robbery conviction. Yes, I was 14 I want to say. Yes.

Q. And isn't that what you were claiming in your affidavit, that you wanted your lawyer to appeal the issue of whether that conviction ought to count?

A. Yes, but it shouldn't count.

Q. Right.

A. Right, right, right, yeah.

Q. So now you are saying you didn't have a conversation with him about appealing on that issue?

A. Uh-huh.

Q. You just had a conversation with him about appealing based on the new crack statute that had been passed?

A. Uh-huh.

Q. Which one were you asking him to appeal?

A. I was asking –

[Objection by Mr. Holly, which was overruled]

Q. So I'm asking you, which area did you ask him to appeal? What issue did you ask him to appeal?

A. My sentence.

Q. What about your sentence you ask him to appeal?

A. Because I felt that my – the one was not violent, and I felt that my old – I was just 14 years old, was not good enough for me to be a career offender, and things like that.

Q. So you asked him to appeal based on the fact that the Judge shouldn't have counted your two previous convictions?

A. Yes, sir.

9

> Q. All right. Did you tell him that in that conversation?
>
> A. No, sir.
>
> Q. What exactly was the issue that you ask him to appeal in that conversation?
>
> A. My sentence.
>
> Q. Just your sentence?
>
> A. Yes.
>
> Q. You said, I want to appeal my sentence?
>
> A. And file ineffective.

Docket No. 27, p. 21-24.

In summary, Petitioner stated in his Memorandum that he "expressly" instructed Mr. DeWerff to file a Notice of Appeal with regard to the prior convictions issue. At the hearing, however, he first testified that he wanted to appeal the Fair Sentencing Act issue and that he did not discuss with his attorney appealing on the prior convictions issue. He then changed his testimony again and stated that he asked Mr. DeWerff to appeal his sentence on the prior convictions issue. Additionally, he apparently forgot, until the last moment, that he had also asked Mr. DeWerff to "file ineffective."

Fifth, Petitioner testified that "around August" 2011, he had a telephone conversation with Mr. DeWerff. Docket No. 27, p. 26. While he did not talk about the appeal, he described the conversation as follows:

> I was just telling him that I needed to – I needed to clean up like my pocket [*sic*] sheet. Because on the compound, you know, if you are hot, as in you are talking to the government, you could get hurt.

10

*Id.*, p. 27.

       Petitioner admitted that he had "a copy of [his] docket sheet." *Id.* He gave the following testimony:

> Q. [By Mr. McDonough] And in looking at the docket sheet, you could see that there was no Notice of Appeal filed, couldn't you?
>
> A. Yes, sir.
>
> Q. And yet you would [*sic*] ask him at that time, hey, how come you didn't file that appeal I ask you to file that day in court.
>
> A. Yes, sir.
>
> Q. You didn't ask him, did you?
>
> A. I didn't ask him then because I am a slow reader. I can't read too good. *But I do know that that was not on there*. But I'm still thinking, you know, I'm new to this federal thing and to this docket sheet and all that. So me not knowing, I should have been looking good enough, but I'm still worried about what's going on on the compound, and my life while I'm in prison. So that right there never was brought up. Yes, you're exactly right.
>
> Q. *You had noticed and you could see from that that no Notice of Appeal had been filed.*
>
> A. *Yes.*
>
> Q. On either one of those two cases?
>
> A. Right.

*Id.*, p. 28-29 (emphasis added).

       Thus, at one point Petitioner testified that he did not find out about the fact that Mr. DeWerff had not filed an appeal in his case until January 2012. At another point, as discussed

11

above, he apparently admitted that he learned from the docket sheet that no Notice of Appeal had been filed.

Sixth, in his Affidavit, Petitioner stated:

> 3) Around January 3, 2011, at my sentencing hearing *the district court judge orally pronounced that I could appeal within 10 days although I previously waived any rights in my plea agreement.* I informed counsel that I wanted to appeal and file an ineffective assistance claim and appeal my sentence. At first counsel tried to persuade me that I could'nt [*sic*] appeal but I told him that since the district judge said that I could I wanted counsel to do so.

Docket No. 5, p. 2 (emphasis added).

Similarly, he testified at the hearing:

> Q. [By Mr. Holly] And what did the Judge say after imposing that sentence?
>
> A. That I had ten days to appeal.
>
> Q. And did you then say something to Mr. DeWerff?
>
> A. Yes.
>
> Q. What did you say to him?
>
> A. I tapped him on his arm, and I hold told [*sic*] him that I would like for him to appeal. And he looked at me, and he told me that – think about – the agreement. And I then looked at him, and *I told him that the district judge stated that I can appeal within ten days.*

Docket No. 27, p. 6-7 (emphasis added).

Judge Trauger, however, actually stated at the sentencing hearing:

> "All right, Mr. Webb. To the extent that you retained your right to appeal your sentence in your Plea Agreement, any appeal must be filed within 14 days."

Case No. 3:09-00044, Docket No. 87, p. 9.

12

Judge Trauger plainly did not tell Petitioner that he could appeal within 10 days "although [he] previously waived any rights in [his] Plea Agreement." She actually told him, "To the extent you retained your right to appeal your sentence in your Plea Agreement, any appeal must be filed within 14 days." Petitioner attempts to argue essentially that he was surprised when Judge Trauger told him he had the "right" to appeal. Therefore, he immediately told Mr. DeWerff to appeal his case. When Mr. DeWerff told him to think about the agreement, Petitioner told Mr. DeWerff that the district judge had stated that he could appeal regardless of the statements in the Plea Agreement. The sentencing hearing transcript, however, shows that Petitioner's right to appeal, as explained by Judge Trauger, was conditional, and that he could appeal only to the extent that he retained his right to do so in the Plea Agreement. Once again, Petitioner's position is inconsistent with undisputed factual matters in the record.

In contrast, Mr. DeWerff was a credible witness. He testified that Petitioner did not ask him to file an appeal at any point. He also testified, at times, that he did not think Petitioner had asked him to file an appeal. The Court views this as a minor inconsistency, because Mr. DeWerff gave a very logical explanation for why he was reasonably certain that Petitioner never asked him to file an appeal. He testified in part:

> Q. [By Mr. McDonough] Why do you think he didn't ask you to appeal it?
>
> A. Because, unlike a lot of things that I do in my practice, filing a Notice of Appeal is – is jurisdictional, it's time sensitive. And had he asked me to do that, those two thoughts would have immediately come to mind, that I needed to file a Notice of Appeal immediately and a Motion to Withdraw.

*Id.*, p. 35.

Petitioner argues that Mr. DeWerff incorrectly testified that he met with Petitioner at the Criminal Justice Center a few days after the sentencing hearing. Docket No. 33, p. 8. Petitioner also claims that Mr. DeWerff previously failed to file a Notice of Appeal for a client named Sam Howells. *Id.,* p. 9. The first point is a minor one, however, on a tangential issue. The second point regarding whether Mr. DeWerff did or did not file an appeal on behalf of Mr. Howells, is essentially irrelevant to the case at bar. Petitioner's inconsistent testimony, however, concerned major points.

For the foregoing reasons, the Court finds as a fact that Petitioner did not ask or instruct his attorney to file an appeal.

The Court now turns to the second directive in Judge Trauger's Order, concerning the disposition of the Government's Motion to Dismiss. The Order is clear that that recommendation must be "[b]ased upon" the undersigned's finding on the factual issue discussed above.

At the conclusion of the evidentiary hearing, counsel for Petitioner sought leave to file a brief, which leave was granted. Docket Nos. 26, 33. The Government also filed a brief (Docket Nos. 26, 38) and Petitioner filed a Reply (Docket No. 39).

Petitioner's post-hearing brief argues in large part that Petitioner has established ineffective assistance of counsel under *Roe v. Flores-Ortega,* 528 U.S. 470 (2000). He also contends that his petition has been timely filed under 28 U.S.C. § 2255(f)(2) or (4). Docket No. 33. Petitioner also argues the merits of whether Petitioner's sentence was appropriate under the

14

Fair Sentencing Act.[3]

These matters, however, are not before the undersigned. Petitioner seeks to argue far more than the narrow issue Judge Trauger referred to the undersigned. As set forth in Judge Trauger's Order, the undersigned's recommendation is to be based upon the undersigned's finding with regard to the factual issue of whether Petitioner told his attorney to appeal his sentence.

The Court can and must just base its recommendation on the controlling authority of *Campbell v. United States*, 686 F.3d 353 (6th Cir. 2012). In *Campbell*, defendant entered into a plea agreement, which partially waived his right to appeal his conviction and sentence. In a later proceeding to vacate his sentence pursuant to 28 U.S.C. § 2255, he argued that his attorney's failure to file an appeal despite his "express instruction to do so" constituted ineffective assistance of counsel. *Id*., p. 355. The district court in *Campbell* did not hold an evidentiary hearing concerning whether Mr. Campbell made the request that his attorney appeal his conviction. The government refused to concede that such an instruction was given, arguing that that fact was irrelevant to the ineffective-assistance question. *Id*., p. 358 n.3. The *Campbell* Court stated it part as follows:

> We therefore hold that even when a defendant waives all or most
> of his rights to appeal, an attorney who fails to file an appeal that a
> criminal defendant explicitly requests has, as a matter of law,
> provided ineffective assistance of counsel that entitles the
> defendant to relief in the form of a delayed appeal.

---

[3] Approximately 6 months after his sentencing in the underlying criminal case, Petitioner filed a "Motion for Reduction of Sentence" based on the Fair Sentencing Act. Case No. 3:10-00015, Docket No. 35. Judge Trauger subsequently appointed counsel and granted that Motion, reducing Petitioner's sentence. *Id*., Docket Nos. 38, 61. The Government has appealed that ruling. *Id*., Docket No. 63.

15

> The final issue to be addressed is the appropriate course on remand. Although nothing in the record contradicts Campbell's assertion that he affirmatively expressed to counsel his desire for an appeal, the government has not conceded the point. Because the resolution of this factual is pivotal to Campbell's claim for relief, the district court must conduct an evidentiary hearing to determine if Campbell in fact expressed the desire for an appeal as he now asserts.
>
> . . .
>
> If the district court finds that Campbell did so, his attorney's failure to file an appeal constituted ineffective assistance of counsel, and Campbell is entitled to file a delayed appeal. *If on the other hand, the district court determines that Campbell provided no such instruction, Campbell is not entitled to any further relief.*

*Id*. at 360 (emphasis added).

In the case at bar, Petitioner relies heavily upon an argument that *Flores-Ortega* imposed a duty upon Mr. DeWerff to consult with Petitioner concerning the appeal, even if Petitioner did not expressly ask him to appeal. Docket No. 33, p. 11-17. The *Campbell* Court thoroughly discussed *Flores-Ortega*. As the *Campbell* Court noted, "*Flores-Ortega* addressed an attorney's obligations with respect to counseling a defendant who had not waived any appeal rights . . . ." 686 F.3d at 357.

Thus, *Campbell* is more analogous to the case at bar than is *Flores-Ortega*. As in *Campbell*, the Court has determined that Petitioner did not give any instruction to his counsel to appeal his guilty plea. Under those circumstances, Petitioner is not entitled to further relief in the form of equitable tolling and/or a delayed appeal.

Moreover, the doctrine of equitable tolling is to be applied sparingly. *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.) *cert denied*, 534 U.S. 1057 (2001). Additionally, a

16

petitioner seeking equitable tolling has the burden of establishing that he has been diligent in pursuing his rights and that "some extraordinary circumstance stood in his way." *Pace v. Diguglielmo,* 544 U.S. 408, 418 (2005). Petitioner cannot satisfy either of these elements. He knew in August 2011, when he reviewed his docket sheet, that an appeal had not been filed, but he did nothing about it until April 2012. Additionally, Petitioner has not shown any extraordinary circumstance that stood in his way of making a timely claim in this case.

For the foregoing reasons, the undersigned recommends that the Government's Motion to Dismiss the instant action (Docket No. 9) be GRANTED, and that this action be dismissed as untimely.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge